UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------------X

MARK DEAS,

                                  Plaintiff,

-against-

THE CITY OF NEW YORK, a municipal corporation;
DETECTIVE ANDREW ERATO, in his individual and
official capacities; DETECTIVE FRANK GALATI, in his
individual and official capacities, POLICE OFFICERS
JOHN DOE # 1-2 (whose identities are currently
unknown but who are known to be police officers and/or
supervisory personnel of the New York City Police
Department), in their individual and official capacities,

                                  Defendants.
---------------------------------------------------------------------X

**FIRST AMENDED COMPLAINT AND JURY DEMAND**

13 Civ. 0240 (KAM)(MDG)

ECF CASE

Plaintiff, Mark Deas, by his attorney, Steven E. Lynch, alleges for his complaint against the defendants as follows:

## PRELIMINARY STATEMENT

1.      Plaintiff brings this action for compensatory damages, punitive damages, and attorney's fees pursuant to 42 U.S.C. § 1983 and 42 U.S.C. § 1988 for violations of his civil rights guaranteed by the Constitution of the United States.

## JURISDICTION

2.      This action is brought pursuant to 42 U.S.C. § 1983 and 42 U.S.C. § 1988 and the Fourth and Fourteenth Amendments to the United States Constitution.

3.      Jurisdiction is founded upon 28 U.S.C. §§ 1331 and 1343.

## VENUE

4.      Venue is properly laid in the Eastern District of New York under 28 U.S.C. § 1391(b)(2), in that this is the District in which the events or omissions underlying the claim arose.

## JURY DEMAND

5.      Plaintiff respectfully demands a trial by jury of all issues in this matter pursuant to Fed. R. Civ. P. 38(b).

## PARTIES

6.      The plaintiff is an African-American male and was at all relevant times a citizen of the City and State of New York.

7.      Defendant, the City of New York, was and is a municipal corporation duly organized and existing under and by virtue of the laws of the State of New York.

8.      Defendant, the City of New York, maintains the New York City Police Department, a duly authorized public authority and/or police department, authorized to perform all functions of a police department as per the applicable sections of the New York State Criminal Procedure Law, acting under the direction and supervision of the aforementioned municipal corporation, the City of New York.

9.      At all times hereinafter mentioned, the individually named defendants, Detective Andrew Erato and Detective Frank Galati,  were duly sworn police officers of said department and were acting under the supervision of said department and according to their official duties.

10.     At all times hereinafter mentioned, the defendants, either personally or through their employees, were acting under color of state law and/or in compliance with the official rules, regulations, laws, statutes, customs, usages and/or practices of the State or City of New

York.

11. Each and all of the acts of the defendants alleged herein were done by said defendants while acting within the scope of their employment by defendant City of New York.

12. Each and all of the acts of the defendants alleged herein were done by said defendants while acting in furtherance of their employment by defendant City of New York.

## FACTS

13. On March 11, 2010, at approximately 4:40 p.m., plaintiff was driving a van near the intersection of Willoughby Avenue and Bushwick Avenue in Brooklyn, New York.

14. Detective Andrew Erato, Detective Frank Galati, and Detective Fawad Khan pulled over plaintiff's van.

15. As plaintiff pulled over his van, plaintiff blew his nose into a tissue.

16. After plaintiff pulled over his van, Detective Andrew Erato and Detective Frank Galati approached the plaintiff's van.

17. Detective Frank Galati walked to the driver's side window of plaintiff's van.

18. Detective Andrew Erato walked to the passenger's side window of plaintiff's van.

19. Detective Frank Galati seized the plaintiff's tissue.

20. Detective Frank Galati searched the tissue and discovered that it contained mucus.

21. Then, Detective Andrew Erato and Detective Frank Galati struck with their fists and a hand held radio the plaintiff's face and sprayed mace in the plaintiff's face.

22. Detective Andrew Erato and Detective Frank Galati dragged plaintiff out of his van and continued striking with their fists and a hand held radio the plaintiff's face.

23. As a result of the defendants' above-mentioned actions, the plaintiff lost

consciousness, defecated in his pants, and suffered injuries and pain to his face, neck, and body.

24. At Woodhull Hospital, plaintiff was diagnosed with injuries, including, but not limited to, a fractured facial bone.

25. While detained in the 83rd Precinct, located at 480 Knickerbocker Avenue, Brooklyn, New York, Detective Frank Galati ordered plaintiff to remove his socks, pants, and underwear and strip searched plaintiff.

26. While detained in Central Booking, in the basement of the Brooklyn House of Detention, located at 275 Atlantic Avenue, Brooklyn, New York 11201, Police Officer John Doe # 1 ordered plaintiff to remove his pants and underwear and strip searched plaintiff.

27. John Doe # 1 was stout, appeared Hispanic, wore glasses, sat behind a desk in the and the basement of the Brooklyn House of Detention and asked plaintiff questions about his pedigree information.

28. Subsequently, plaintiff was moved to a second holding pen in Central Booking, located in the Brooklyn House of Detention and strip searched for the third time. John Doe # 2 ordered plaintiff to remove his pants and underwear and strip searched plaintiff just prior to plaintiff's transportation to holding pens located in Brooklyn Criminal Court, located at 120 Schermerhorn Street, Brooklyn, New York 11201.

29. Plaintiff was charged with Penal Law section 120.00 reckless endangerment, P.L. § 205.30 resisting arrest, and P.L. § 220.03 criminal possession of a controlled substance in the seventh degree.

30. On May 8, 2012, all charges against the plaintiff were adjourned in contemplation of dismissal.

FIRST CAUSE OF ACTION
42 U.S.C. § 1983 - Fourth Amendment Violation for Excessive Force
(Against the Individual Officer Defendants)

31. Plaintiff repeats and re-alleges paragraphs 1 through 30 as if fully set forth herein.

32. While in the course of their duties and while acting under color of law, Detective Andrew Erato and Detective Frank Galati effected a seizure and arrest of plaintiff by intentionally using excessive physical force against plaintiff, including but not limited to striking with their fists and a hand held radio the plaintiff's face and spraying mace in the plaintiff's face.

33. The physical attacks of the individual officer defendants on plaintiff were objectively unreasonable.

34. The individual officer defendants' use of excessive physical force caused plaintiff injuries, including but not limited to, a broken facial bone, bruising to the face and neck, pain in the jaw, pain in the eyes, and emotional distress.

35. By virtue of the foregoing, the defendants deprived the plaintiff of his Fourth Amendment rights under the United States Constitution to be free from unreasonable seizures of his person and are liable to plaintiff under 42 U.S.C. §1983.

SECOND CAUSE OF ACTION
42 U.S.C. § 1983 - Fourth Amendment Violations Illegal Strip Search in 83rd Precinct
(Against the Individual Officer Defendant)

36. Plaintiff repeats and re-alleges paragraphs 1 through 35 as if fully set forth herein.

37. Detective Frank Galati's strip search of plaintiff in the 83rd precinct was illegal because no police officer had reasonable suspicion to believe that the plaintiff was hiding

illegal items under his clothes.

38. Moreover, at the time of plaintiff's strip search in the 83rd precinct, plaintiff had not been arraigned before a judge nor been admitted to a correctional facility.

39. By virtue of the foregoing, the defendants deprived the plaintiff of his Fourth Amendment rights under the United States Constitution to be free from unreasonable searches of his person and are liable to plaintiff under 42 U.S.C. §1983.

THIRD CAUSE OF ACTION
42 U.S.C. § 1983- Fourth Amendment Violations Illegal Strip Search in Central Booking
(Against the Individual Officer Defendant)

40. Plaintiff repeats and re-alleges paragraphs 1 through 39 as if fully set forth herein.

41. Defendant Police Officer John Doe # 1's strip search of plaintiff in Central Booking was illegal because no officer had reasonable suspicion to believe that plaintiff was hiding illegal items under his clothes.

42. Plaintiff was previously strip searched, leaving Defendant Police Officer John Doe # 1 with no reason to believe that plaintiff was hiding illegal items under his clothes.

43. At the time of plaintiff's strip search in Central Booking, plaintiff had not been arraigned before a judge nor been admitted to a correctional facility.

44. By virtue of the foregoing, the defendants deprived the plaintiff of his Fourth Amendment rights under the United States Constitution to be free from unreasonable searches of his person and are liable to plaintiff under 42 U.S.C. §1983.

FOURTH CAUSE OF ACTION
42 U.S.C. § 1983- Fourth Amendment Violations Illegal Strip Search in Central Booking
(Against the Individual Officer Defendants)

45. Plaintiff repeats and re-alleges paragraphs 1 through 44 as if fully set forth

herein.

46.     Plaintiff was previously strip searched on two occasions after his arrest, leaving Police Officer John Doe # 2 with no reason to believe that plaintiff was hiding illegal items under his clothes.

47.     At the time of plaintiff's strip search in Central Booking, plaintiff had neither seen a judge and nor been admitted to a correctional facility.

48.     By virtue of the foregoing, the defendants deprived the plaintiff of his Fourth Amendment rights under the United States Constitution to be free from unreasonable searches of his person and are liable to plaintiff under 42 U.S.C. §1983.

FIFTH CAUSE OF ACTION
Municipal Liability
(Against Defendant City)

49.     Plaintiff repeats and re-alleges paragraphs 1 through 48 as if fully set forth herein.

50.     The City of New York and the New York City Police Department fail to scrutinize officers and divisions with a history of multiple lawsuits for civil rights violations, like the Brooklyn North Narcotics Division and the individual defendants.

51.     The City's continuing failure to deter police misconduct has led to ever increasing numbers of lawsuits for repeated misconduct by the same officers, same units, and same precincts. In the fiscal year of 2012, there were 2,004 tort cases commenced against the New York City Police Department, up from 1,425 tort cases commenced for the fiscal year of 2008.[1] The City of New York has paid at least $80 million for torts against the New York City Police Department since the fiscal year of 2008, peaking in fiscal year of 2009 when it paid out more

than $117 million.[1] In the past ten years, the City of New York has paid nearly a billion dollars on lawsuits brought against the NYPD.[2]

52. The widely held assumption is that civil rights lawsuits deter police misconduct. "The purpose of § 1983 is to deter state actors from using the badge of their authority to deprive individuals of their federally guaranteed rights and to provide relief to victims if such deterrence fails." Wyatt v. Cole, 504 U.S. 158, 161, (1992) citing Carey v. Piphus, 435 U.S. 247, 254-257, (1978). "As far as we know, civil liability is an effective deterrent [to civil rights violations], as we have assumed it is in other contexts." See Hudson v. Michigan 547 U.S. 586, 598 (2006) citing Correctional Services Corp. v. Malesko, 534 U.S. 61, 70 (2001) and Nix v. Williams, 467 U.S. 431, 446, (1984). "It is almost axiomatic that the threat of damages has a deterrent effect (citation omitted) surely particularly so when the individual official faces personal financial liability." Carlson v. Green, 446 U.S. 14, 21, (1980), citing Imbler v. Pachtman, 424 U.S. 409, 442, and footnote 6 (1976).

53. In this case, these same two officers have previously been sued together for civil rights violations in in at least three other cases, each time represented by Corporation Counsel: Bailey v. City of New York, et al, 08-cv-01841-ENV-JMA (EDNY) (settled for $90,000), which also claimed excessive force; Spears v. City of New York, et al, 10-cv-03461-JG-RER (settled for unknown amount), which like this case involved forcefully dragging a plaintiff out of a motor vehicle, further excessive force, and an illegal strip search; and Ingram v. City of New York, et

---

[1] Fiscal 2013 Preliminary Mayor's Management Report for the New York City Police Department, available at www.nyc.gov/html/ops/downloads/pdf/mmr0912/nypd.pdf, see page 5, last visited on July 2, 2013.

[2] "NYPD Has Paid Out Nearly $1 Billion in Claims Over Past Decade," by Associated Press Writers Colleen Long and Jennifer Peltz, http://www.law.com/jsp/article.jsp?id=1202473432953, October 15, 2010 last visited on July 2, 2013.

al, 11-cv-02696-NGG-VVP (settling for $25,000 claims of false arrest, excessive force, and illegal strip search).

54. Defendant Detective Andrew Erato has been previously sued for civil rights violations in the Eastern District of New York in two additional lawsuits, each time represented by Corporation Counsel: Rose v. City of New York, et al, 10-CV-03069-KAM-VVP (settling for an undisclosed amount claims including false arrest, excessive force, illegal strip search) and Florian Franke v. City of New York, et al, 04-cv-03335-JG-CLP (settling for $10,300.00 a claim of false arrest).

55. Detective Frank Galati has been previously sued for civil rights violations in the Eastern District of New York in four additional lawsuits, each time represented by Corporation Counsel: Brown et al v. City of New York et al, 12-cv-03280-CBA-VMS (settling for an unknown amount claims of false arrest, excessive force, illegal strip search); Plummer v. City of New York et al, 11-cv-06056-FB-RML (settling for $8,500.00 claims of false arrest and illegal strip search); Ingram v. City of New York et al, 11-cv-02696-NGG-VVP (settling for $25,000.00 claims of false arrest, excessive force, and illegal strip search); and Burgess v. City of New York et al, 06-cv-05165-LAP (settling for $8,750.00 claims of false arrest, excessive force, and illegal strip search).

56. However, the City of New York has isolated NYPD officers from accountability for its civil rights lawsuits by indemnifying officers who violate the constitutional rights of citizens, and, as a result, is preventing civil rights lawsuits from having any deterrent value to the City, the NYPD or its officers. Civil rights lawsuits against police officers have no impact on the officers' careers, regardless of the expense to the City of the officers' lawsuit liability, even after multiple lawsuits. In 1999, former Comptroller Alan Hevesi reported that there was a "a total

disconnect" between the settlements of even substantial civil claims and police department action against officers.[3] This "total disconnect" between officers' liability and NYPD discipline, results in a system where the City pays vast sums to settle false arrests, but the NYPD does nothing to investigate nor address the underlying causes of such false arrests or officers who have incurred large sums of civil rights liability.

57. The City Council, Government Operations Committee, despite being alerted at a City Council hearing on December 12, 2009, and on other occasions, to the obvious problem of officers and precincts with a disproportionate responsibility for civil rights lawsuit liability, has failed to take action to hold officers or precincts accountable. It has likewise failed to hold an investigative hearing into what extent specific officers, units and precincts are disproportionately responsible for New York City civil rights lawsuits.

58. Brooklyn North Narcotics, and the unit of Detectives Erato and Galati specifically, has an extended history of civil rights violations. Lieutenant Daniel Sbarra, a commanding officer of Detectives Erato and Galati, was named as a defendant in many of the above mentioned cases. Moreover, Lt. Sbarra has been named in a total of fifteen lawsuits and settlements involving Lt. Sbarra's team, including Detectives Erato and Galati, total more than $1.5 million dollars.[4] According to the City Comptroller's Office fiscal year report for 2009, 31 Civilian Complaint Review Board complaints originated in Brooklyn North Narcotics.[5] In

---

[3] Bob Hennelly's WNYC report, "Amid City Budget Crisis, New Scrutiny on Millions in NYPD Settlements" from June 8, 2011: http://www.wnyc.org/articles/its-free-country/2011/jun/08/amid-city-budget-grappling-new-scrutiny-millions-nypd-settlements/, last visited on July 2, 2013.

[4] "Repeated charges of illegal searches, violence, racial profiling, racial slurs and intimidation against Lt. Daniel Sbarra and his team have cost the city more than $1.5 million in settlements" by New York Daily News, Rocco Parascandola John Marzulli, Barry Paddock, and Dareh Gregorian, http://www.nydailynews.com/new-york/brooklyn/lt-daniel-sbarra-team-finest-article-1.1348075, May 19, 2013 last visited on July 2, 2013.

[5] "CCRB: Attribution of Complaints to the Organized Crime Control Bureau 2005-2009," https://data.cityofnewyork.us/Public-Safety/CCRB-Attribution-of-Complaints-to-the-Organized-Cr/v3a6-muuw, lasted visited on July 2, 2013.

addition to prior lawsuits, the City has been aware for some time, from lawsuits, notices of claim, complaints filed with the Civilian Complaint Review Board, and judicial rulings suppressing evidence and finding officers incredible as a matter of law, that a disturbing number of their police officers from Brooklyn North Narcotics unlawfully search and seize citizens, bring charges against citizens with no legal basis, perjure themselves in charging instruments and testimony, and fail to intervene in and report the obviously illegal actions of their fellow officers.

59. Nevertheless, the City has repeatedly resisted attempts to catalog even basic information gleaned from civil rights lawsuits that could improve training, leadership, supervision, and discipline in the NYPD. The City's deliberate indifference towards the contents of civil rights litigation, individual officers repeatedly named in lawsuits, incidents repeatedly occurring in the same division, and patterns of misconduct that arise in civil rights litigation has caused the constitutional violations of excessive force and illegal strip search suffered by plaintiff.

60. Further, the City has no procedure to notify individual officers or their supervisors of unfavorable judicial review of their conduct or to calculate the total liability of an individual officer or of a precinct. Without this notification, improper search and seizure practices and incredible testimony go uncorrected, problematic supervision or leadership at the precinct level goes ignored, and repeated misconduct by individual officers goes unaccounted for. Even occasional judicial findings that officers have testified incredibly are not reported routinely to the police department or any oversight agencies.

61. All of the aforementioned has created a climate where police officers and detectives lie to prosecutors and in police paperwork and charging instruments, and testify falsely, with no fear of reprisal. "Informal inquiry by the court and among the judges of this

court, as well as knowledge of cases in other federal and state courts, has revealed anecdotal evidence of repeated, widespread falsification by arresting police officers of the New York City Police Department. Despite numerous inquiries by commissions and strong reported efforts by the present administration-through selection of candidates for the police force stressing academic and other qualifications, serious training to avoid constitutional violations, and strong disciplinary action within the department-there is some evidence of an attitude among officers that is sufficiently widespread to constitute a custom or policy by the city approving illegal conduct of the kind now charged." See Colon v. City of New York, et al, 2009 WL 4263362 (E.D.N.Y.) (Weinstein, J.).

62. The City is aware that all of the aforementioned has resulted in violations of citizens' constitutional rights. Despite such notice, the City has failed to take corrective action. This failure and these policies caused the officers in the present case to violate plaintiffs' civil rights, without fear of reprisal.

63. Plaintiff has been damaged as a result of the deliberate indifference of the Defendant City.

64. As a result of the foregoing, plaintiff Mark Deas is entitled to compensatory damages in the sum of one million dollars ($1,000,000.00) and is further entitled to punitive damages against the individual defendants in the sum of one million dollars ($1,000,000.00).

WHEREFORE, plaintiff Mark Deas demands judgment in the sum of one million dollars ($1,000,000.00) in compensatory damages, one million dollars ($1,000,000.00) in punitive damages, plus attorney's fees, costs, and disbursements of this action.

Dated:  New York, New York
       July 3, 2013                               By:         /S/
                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                         _____

Steven E. Lynch
Attorney for Plaintiff
The Law Offices of Steven E. Lynch
233 Fifth Avenue, Suite 4A
New York, New York 10016
(T) (718) 858-8737
(F) (718) 690-3593
stevenelynch@gmail.com